IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RHONDA HILL WILSON, et al.,

               Plaintiffs,

    v.

JESSICA K. ALTMAN, et al.,

               Defendants.

CIVIL ACTION
NO. 19-1549

## **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 3

II. BACKGROUND ........................................................................................................... 6

  A.  The Purpose of the Mcare Act ................................................................................ 6

  B.  Factual History of the Present Case ........................................................................ 7

III. STANDARD OF REVIEW ........................................................................................ 10

IV. ANALYSIS ................................................................................................................. 12

  A.  Plaintiffs' Federal Claims in Counts I to IV and the Rooker-Feldman Doctrine ............. 13

    1.  Plaintiffs' Claims in Counts I, II, and III are Barred by Rooker-Feldman .................. 16

      a.  Plaintiffs Lost in State Court ................................................................. 17

      b.  Plaintiffs Were Injured by the Set off Order ......................................... 18

      c.  Plaintiffs Are Asking the Court to Review and Overturn the Set off Order ........... 19

    2.  Count IV Is Not Barred By The Rooker-Feldman Doctrine ........................................ 20

  B.  Plaintiffs' Claims Against Defendants in Their Official Capacities are Barred by Eleventh

      Amendment Immunity ............................................................................... 22

C.   Plaintiffs' Claims Against Defendants in Their Individual Capacities in Count IV will be Dismissed ........................................................................................................ 24

D.   Plaintiffs' Claim in Count IV for a Violation of Their Right to Equal Protection will be Dismissed for Failure to State a Claim ............................................................ 25

E.   Defendants Are Entitled to Qualified Immunity in This Case ......................................... 26

F.   Plaintiffs' State Law Claims Will Be Dismissed Pursuant to 28 U.S.C. § 1367 .............. 27

G.   Plaintiffs' Request for Punitive Damages Will Be Dismissed ......................................... 28

H.   Leave to Amend the Complaint Will Be Denied in This Case .......................................... 28

V. CONCLUSION ................................................................................................................... 29

**Slomsky, J.**                                                                 **August 5, 2019**

## I.      INTRODUCTION

Rhonda Hill Wilson, Esquire, and The Law Office of Rhonda Hill Wilson, P.C., ("Plaintiffs") bring the present suit pursuant to 42 U.S.C. § 1983,[1] alleging constitutional violations against them committed by employees of the Commonwealth of Pennsylvania. The action arises from a dispute over attorney's fees. Plaintiffs represented individuals in a medical malpractice case in Pennsylvania state court. In that case, a jury awarded Plaintiffs' clients over $2.5 million in damages, including punitive damages of $875,000. (Doc. No. 4-3 at 3.) According to a Pennsylvania statute, 25% of punitive damages awarded in all medical professional liability cases must be allocated to a state fund. 40 Pa.C.S.A. § 1303.505. This fund is known as the Medical Care Availability and Reduction of Error Fund ("the Fund").

In this case, following the jury verdict in the malpractice action, a state court judge ordered that Plaintiffs distribute the awarded damages. Under the Order, Plaintiffs were responsible for sending the appropriate amount to their clients in the underlying case. On May 24, 2018, Plaintiffs sent the funds to their clients, which included the punitive damages awarded, but neglected to subtract from the punitive damages the 25% for the Fund. (Doc. No. 1 ¶ 32.)

---

[1]   42 U.S.C. § 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

As a result, on August 22, 2018, the Fund filed a motion in state court seeking to withhold the money owed to it from the attorney's fees it was scheduled to pay to Plaintiffs in the underlying medical malpractice case. (Id. ¶ 41.) On December 13, 2018, the state court judge granted the Fund's motion and the money in question was withheld from the attorney's fees that the Fund sent to Plaintiffs. (Id. ¶¶ 50, 51.) Plaintiffs appealed this decision to the Pennsylvania Superior Court. (Id. ¶ 50.) The appeal is still pending. (Doc. No. 4 at 3.)

Because Plaintiffs felt that it was entirely improper for counsel responsible for representing the Fund or its Executive Director or the Commonwealth Insurance Commissioner to have sought the offset, Plaintiffs brought the instant suit in federal court on April 11, 2019 naming as Defendants the following:

- Jessica K. Altman, Commissioner of the Commonwealth of Pennsylvania Department of Insurance.

- Ted Otto, Executive Director of the Fund.

- Kathryn McDermott Speakes, Esquire, Senior Litigation Counsel of the Pennsylvania Insurance Department.

- Amy G. Daubert, Esquire, Chief Counsel of the Pennsylvania Insurance Department.

- John J. Lacek, Esquire, Counsel with the Pennsylvania Insurance Department.[2]

(Doc. No. 1 ¶¶ 3-7.)

The Complaint contains six Counts. In Counts I to IV, Plaintiffs allege civil rights violations against Defendants pursuant to 42 U.S.C. § 1983 ("Section 1983"). In Count I, Plaintiffs claim that Defendants violated their substantive due process rights under the Fourth

---

[2] Although Plaintiffs name five persons as Defendants, the Complaint inexplicably does not describe the actions of the individual Defendants in this case. They are treated as if they are a single entity.

and Fourteenth Amendments by unreasonably seizing attorney's fees from them. (Doc. No. 1 ¶¶ 54, 61.) In Count II, Plaintiffs claim that withholding the money in question amounted to an unconstitutional taking in violation of their rights under the Fifth Amendment. (Id. ¶ 65.) In Count III, Plaintiffs contend that the withholding of the attorney's fees constitutes an excessive fine in violation of the Eighth Amendment. (Id. ¶ 85.) In Count IV, Plaintiffs assert that Defendants made disparaging remarks about them and ignored information provided by them for no other reason than race in violation of their right to equal protection under the Fourteenth Amendment.[3] (Id. ¶ 93.) In Count V, Plaintiffs allege a state law abuse of process claim against Defendants, claiming that they abused the set off process in order to illegally take money from them. (Id. ¶ 103.) Finally, in Count VI, Plaintiffs request punitive damages for Defendants' alleged "reckless and outrageous" conduct in securing the set off Order. (Id. ¶ 108.)

On May 15, 2019, Defendants filed a Motion to Dismiss the Complaint for Failure to State a Claim or for Lack of Subject Matter Jurisdiction. (Doc. No. 4.) On May 29, 2019, a Response to the Motion was filed (Doc. No. 7), and on June 4, 2019, Defendants filed a Reply. (Doc. No. 9.) The Court held a hearing on the Motion to Dismiss on June 18, 2019. On June 26, 2019, the Court entered an Order requesting that the parties submit supplemental memoranda on the applicability of the doctrine of qualified immunity to this case, if any. (Doc. No. 13.) Accordingly, the parties submitted their supplements on July 12, 2019.

For the reasons noted below, the Court will grant Defendants' Motion to Dismiss the Complaint.

---

[3] Plaintiffs do not describe in Count IV the information that Defendants allegedly ignored or the documents in which Defendants made disparaging remarks about them. This will be discussed infra.

## II.     BACKGROUND

As noted above, this case implicates the Medical Care Availability and Reduction of Error Act ("Mcare Act"). The Court will review the pertinent sections of the Mcare Act and then discuss the factual history of this case.

### A.     The Purpose of the Mcare Act

The Mcare Act was passed by the Pennsylvania General Assembly in 2002 to ensure that medical care is available in the Commonwealth "through a comprehensive and high-quality health care system." 40 Pa.C.S.A. § 1303.101(a). The Mcare Act requires all health care providers to purchase medical professional liability insurance in the minimum amount of $500,000 per occurrence or claim to guarantee that people injured due to medical negligence receive reasonable compensation. § 1303.711(d).

The Act also created the Mcare Fund ("the Fund") to "pay claims against participating health care providers for losses or damages awarded in medical professional liability actions against them in excess of the basic insurance coverage required by section 711(d)." § 1303.712(a). The Fund exists within the State Treasury and is operated by employees of the Commonwealth. It ensures adequate compensation to victims by paying damages in excess of the basic coverage amount, up to $500,000 per occurrence. § 1303.712(c)(2)(i). If the Fund is required to pay a claim, it has until "December 31 following the August 31 on which [the claim] became final." § 1303.712(j).

Relevant here, the Mcare Act also provides that if punitive damages are awarded against a health care provider in a medical professional liability case, the prevailing party is entitled to 75% of the punitive damages award and the Fund is entitled to 25% of the punitive damages award. § 1303.505(e).

## B.  Factual History of the Present Case

In December 2008, Plaintiffs were retained as counsel to represent Robert Dubose, suing in his own right and as the Administrator of the Estate of Elise Dubose ("the Estate"), in a medical malpractice action against Willowcrest Nursing Home and Albert Einstein Health Care Network.  (Doc. No. 1 ¶ 21.)  Plaintiffs filed Mr. Dubose's lawsuit in the Court of Common Pleas of Philadelphia County in 2009.  (Id. ¶ 22.)  Four years later, on March 21, 2013, a jury returned a verdict for Mr. Dubose and the Estate, which included an award of punitive damages. (Id. ¶ 23.)  The verdict and jury award were affirmed by the Pennsylvania Supreme Court on November 22, 2017.  (Id. ¶ 26.)

On December 13, 2017, Plaintiffs filed a Petition to Distribute Proceeds from the medical malpractice lawsuit.  (Id. ¶ 29.)  On April 27, 2018, this petition, which included a stipulation regarding Plaintiffs' 40% fee and litigation costs, was granted by Court Order.  (Id. ¶¶ 29-31.) The Order set forth how the damages were to be distributed.  Regarding punitive damages, the Order provided that they were to be paid as follows:

5.  The Punitive Damages jury award of $614,367.96 (after subtraction of attorney fees at 40% and one-fourth (1/4th) of the costs)[4] shall be paid as follows:

a.  $460,775.97 to The Estate of Elise Dubose, Deceased, Robert Dubose, Administrator; provided, however, that counsel shall not distribute any funds to the said Administrator until the additional security as may be required by the Register of Wills of Philadelphia

---

[4]  This amount was calculated as follows:

The Punitive Damages Jury Verdict of $875,000, plus 6% interest through 4/18/2019, for a gross sum of $1,119,554.38.
$1,119,664.38 - $447,865.75 (40% counsel fees) = $671,798.63
$671,798.63 - $57,430.57 (1/4 costs) = $614,367.96
$614,367.96 * 25% (MCARE's statutory portion of punitive damages) = $153,591.99

(Doc. No. 4-3 at 3.)  Plaintiffs fail to explain why the Fund's portion of the punitive damages awarded was calculated after attorney's fees and costs were deducted.

County pursuant to 20 Pa.C.S.A. § 3323(b)(3) is posted, as per the Survival Claim.

    b.   $153,591.99 to the Pennsylvania MCare Fund as per statutory requirement . . . .

(Doc. No. 12-1 at 2-3.) Pursuant to this Order, a check for $1,695,051.55[5] was sent to Rhonda Hill Wilson, Esquire and her office ("Plaintiffs"), who were responsible for sending the Estate its share. (Doc. No. 4-3 at 4.) On May 24, 2018, Plaintiffs sent to the Estate its portion of the award, minus attorney's fees and costs, which amounted to $1,207,443.47.[6] (Doc. No. 1 ¶ 32.) Notably, Plaintiffs did not set aside the amount of punitive damages owed to the Fund. (Id.) Again, this amounted to $153,591.99. (Doc. No. 4-3 at 3.)

On June 6, 2018, Defendants informed Plaintiffs that the Fund had not been paid its portion of the punitive damages. (Id. ¶ 34.) Plaintiffs then contacted Mr. Dubose and advised him that he was required to pay to the Fund $153,591.99 from the award the Estate had received. (Id. ¶ 35.) Shortly thereafter, on June 11, 2018, Plaintiffs filed a Notice of Claim to the Estate on behalf of Defendants for the outstanding funds owed to the Fund. (Id. ¶ 40.) On August, 22, 2018, the Fund filed a Motion to Approve [an] Equitable Set off in the Philadelphia Court of Common Pleas, Orphan's Court Division. (Id. ¶ 41.) Defendants sought to withhold $153,591.99, which was the 25% of the punitive damages it was entitled to receive, from fees and costs that the Fund was required to pay to Plaintiffs on December 31, 2018.[7] (Id.) Plaintiffs filed an Answer to the Motion on August 27, 2018. (Id. ¶ 42.)

---

[5]  Neither Plaintiffs nor Defendants explain how this amount was calculated.

[6]  From the Complaint, it is unclear how Plaintiffs arrived at this amount.

[7]  It is undisputed here that the Fund had to pay Plaintiffs $570,361.00 on December 31, 2018. Neither Plaintiffs nor Defendants, however, have described how this amount was reached or why the Fund was required to pay it, other than by noting that it was approved by the state

In connection with the underlying state court case, oral argument on the Motion to Approve the Equitable Set off was held in state court on October 30, 2018. The Fund's counsel then filed a Reply Brief on November 19, 2018, in which Plaintiffs alleged they were accused of being disingenuous. (Id. ¶¶ 43, 46.) The next day, Plaintiffs filed a Motion to Dismiss Mcare's Motion for Set off. (Id. ¶ 47.) Seven days later, on November 27, 2018, Plaintiffs filed a Surreply to the Mcare Fund's Reply Brief, in which they "decried the defaming, derogatory and malicious characterizations made against Plaintiffs."[8] (Id. ¶ 48.) Defendants replied to Plaintiffs' Motion to Dismiss the Set off Motion on December 10, 2018. (Id. ¶ 49.)

On December 13, 2018, Judge Matthew D. Carrafiello of the Philadelphia Court of Common Pleas entered an Order granting the Mcare Fund's Motion to Approve Equitable Set off ("Set off Order"). (Id. ¶ 50.) The Set off Order provided as follows:

> AND NOW, this 13th of December 2018,
>
> WHEREAS, the Mcare Fund has not been paid the $153,591.99 in punitive damages as ordered by this Court on April 27, 2018, and
>
> WHEREAS, the Mcare Fund owes the Plaintiff $570,361.00 on or about December 31, 2018,
>
> It is hereby ORDERED and DECREED that the Court approves the Mcare Fund setting off this payment by the punitive damages award so that the Mcare Fund's net payment of $416,769.01 on or about December 31, 2018, will result in the Mcare Fund making full and final payment in the above-captioned matter . . . .

(Doc. No. 4-2.) On December 31, 2018, the Fund, pursuant to the Set off Order, issued a check to Plaintiffs in the amount of $416,769.01, which was less the $153,591.99 due to the Fund. (Id.

---

court judge. (Doc. No. 1 ¶ 41.) Since the parties have stipulated to the amount, this Court will not dwell on the apparent lack of detail.

[8] It is unclear how the "characterizations" in the Reply Brief were "defaming, derogatory and malicious."

¶ 51.) (Id.) Plaintiffs appealed the Set off Order to the Pennsylvania Superior Court on January 7, 2019. (Id.) This prompted Judge Carrafiello to issue an Opinion Sur Appeal on March 28, 2019.[9] (Doc. No. 4 at 3.) The appeal is still pending. (Doc. No. 4 at 3.)

On April 11, 2019, Plaintiffs filed this lawsuit in federal court. (Doc. No. 1.) On May 15, 2019, Defendants filed the Motion to Dismiss the Complaint for Failure to State a Claim or for Lack of Subject-Matter Jurisdiction. (Doc. No. 4.) The Motion is now ripe for disposition. For the reasons stated below, the Motion to Dismiss (Doc. No. 4) will be granted.

## III.    STANDARD OF REVIEW

Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). The motion to dismiss standard under Rule 12(b)(6) is set forth in Ashcroft v. Iqbal. 556 U.S. 662 (2009). After Iqbal, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer

---

[9]  An Opinion Sur Appeal is filed by a judge pursuant to Pennsylvania Rule of Appellate Procedure 1925, which provides:

(a) Opinion in support of order.

(1) General rule – Except as otherwise prescribed by this rule, upon receipt of the notice of appeal, the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall forthwith file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of, or shall specify in writing the place in the record where such reasons may be found.

Pa. R. A. P. 1925(a)(1).

possibility that a defendant has acted unlawfully." Id. (quoting Iqbal, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit Court of Appeals in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (alteration in original) (citation omitted). The "plausibility"

determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Alternatively, Defendants move to dismiss Plaintiffs' federal claims in Counts I to IV under Federal Rule of Civil Procedure 12(b)(1). Rule 12(b)(1) requires a court to grant a motion to dismiss if the court lacks subject-matter jurisdiction to hear a claim. Rule 12(b)(1) states:

> Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
>
> (1) lack of subject-matter jurisdiction . . . .

Fed. R. Civ. P. 12(b)(1).

Challenges to subject-matter jurisdiction under Rule 12(b)(1) may be either facial or factual. See In re Schering Plough Corp. Intron/Termodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012). "Facial attacks, like those presented in this case, contest the sufficiency of the pleadings, and the trial court must accept the complaint's allegations as true." Walthour v. Herron, No. 11–1690, 2011 WL 1325981, at *2 (E.D. Pa. Apr. 7, 2011) (quotations omitted); see also Common Cause of Pa. v. Pennsylvania, 558 F.3d 249, 257 (3d Cir. 2009). A factual challenge is not made in this case.

## IV.    ANALYSIS

As noted earlier, Plaintiffs bring a six-Count Complaint under 42 U.S.C. § 1983 ("Section 1983") and Pennsylvania law. In Counts I to III, Plaintiffs allege that Defendants violated their rights under the Fourth, Fifth, Eighth and Fourteenth Amendments by withholding Plaintiffs' attorney's fees in accordance with the Set off Order. (Doc. No. 1.) In Count IV, Plaintiffs allege that Defendants violated their right to equal protection under the Fourteenth Amendment for making disparaging remarks about and ignoring information provided by Plaintiffs. (Id. ¶¶ 100-101.) In Count V, Plaintiffs bring an abuse of process claim against Defendants for seeking the

Set off Order under state law. (Id. ¶ 103.) Finally, in Count VI, Plaintiffs request punitive damages as a result of Defendants' allegedly outrageous conduct. (Id. ¶ 108.)

In the Motion to Dismiss, Defendants advance a number of arguments in favor of dismissing the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). First, Defendants assert that Plaintiffs' federal claims are barred by the Rooker-Feldman Doctrine. (Doc. No. 4 at 4.) Second, Defendants submit that they are immune from suit in their official capacities under the Eleventh Amendment. (Id. at 5.) Third, with regard to Plaintiffs' individual capacity claims asserted in the Counts alleging civil rights violations, Defendants argue that Plaintiffs fail to demonstrate their personal involvement in the alleged constitutional violations. (Id. at 7.) Fourth, Defendants aver that they are entitled to sovereign immunity from Plaintiffs' state law claim. (Id. at 9.) Fifth, in their supplemental brief, Defendants argue that they are likewise entitled to qualified immunity in this case. In addition, the Court will discuss whether the equal protection claim in Count IV sufficiently alleges a violation of the Equal Protection Clause. Each argument will be addressed infra.

### A.   Plaintiffs' Federal Claims in Counts I to IV and the Rooker-Feldman Doctrine

Defendants argue that this action is an improper attempt by Plaintiffs to invalidate the state court order permitting the Fund to offset the legal fees, and for this reason it is barred by the Rooker-Feldman Doctrine as explained below. (Doc. No. 4 at 2.) The Court agrees that the claims in Counts I, II, and III are barred by Rooker-Feldman because they seek appellate review of a state court order or judgment in federal court.[10] Plaintiffs' claims in Counts IV, however, are based on allegations that are independent of the state court Set off Order and therefore are not barred.

---

[10] Because Counts I to III are being dismissed under the Rooker-Feldman Doctrine, there is no need to review the elements of each claim set forth in these Counts.

The Rooker-Feldman Doctrine is a legal tenet spawned by the United States Supreme Court decisions in Rooker v. Fidelity Tr. Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). These cases "established the principle that federal district courts lack jurisdiction over suits that are essentially appeals from state-court judgments." Great Western Mining & Mineral Co. v. Fox Rothschild, LLP, 615 F.3d 159, 165 (3d Cir. 2010). The Supreme Court has restricted the scope of this doctrine to encompass only those claims "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Id. (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)).

With these principles in mind, the Third Circuit has developed a four-part test that must be met for a court to dismiss a claim under Rooker-Feldman:

> (1) The federal plaintiff lost in state court; (2) the [federal] plaintiff "complain[s] of injuries caused by [the] state-court judgments"; (3) [the state-court] judgments were rendered before the federal suit was filed; and (4) the [federal] plaintiff is inviting the district court to review and reject the state judgments.

Id. (quoting Exxon Mobil, 544 U.S. at 284).

Examples of cases that were dismissed under Rooker-Feldman would be instructive at this point. One such case is Lyman v. Philadelphia Court of Common Pleas Domestic Relations Division, 751 Fed. App'x 174 (3d Cir. 2018), in which a pro se plaintiff filed suit under 42 U.S.C. § 1983 and alleged violations of his constitutional rights against the Philadelphia Court of Common Pleas Domestic Relations Division ("DRD") and two judges of the court. Id. at 175. The plaintiff had previously instituted a no-fault divorce proceeding and child support action in the DRD with his then-wife. Id. Following the DRD judge's determination that plaintiff had to pay alimony and child support, plaintiff filed "petitions to modify" the judgment, asserting that

14

he did not have the funds to meet the ordered payments.  Id.  Nonetheless, the state court judge

entered orders that required plaintiff to make payments totaling $17,000.  Id.  Upon plaintiff's

failure to do so, the judge held him in contempt and ordered he be imprisoned.  Id.

After a relative paid the outstanding debt owed by the plaintiff and the DRD retroactively

decreased his support payments, plaintiff filed his § 1983 claim in federal court against the DRD

and two judges thereof ("Defendants") alleging violations of his Fourth, Sixth, and Fourteenth

Amendment rights arising from the state court orders.  Id. at 176.  Defendants moved to dismiss

plaintiff's action under the Rooker-Feldman Doctrine.   In turn, the district court held that

Rooker-Feldman barred consideration of plaintiff's claims seeking relief for injuries caused by

the enforcement orders because they were inextricably connected with the state court

proceedings.  Id.  Plaintiff subsequently appealed.  Id.

In affirming the district court's findings under Rooker-Feldman, the Third Circuit applied

the test, noted supra, and reasoned as follows:

> We find that all four requirements under Rooker-Feldman are met. First,
> [plaintiff] lost in state court when DRD entered enforcement orders against him
> and ordered his imprisonment following civil contempt proceedings. Second,
> [plaintiff] complains of injuries caused by the state court judgments, namely, that
> the October 29, 2014, enforcement order "made no finding regarding [his] present
> ability to comply with the support order or the purge amount," and that the civil
> contempt proceedings took place without provision of counsel for him. (App. at
> 42.) Third, the state court judgments were finalized before [plaintiff] filed his
> federal action. And fourth, we undoubtedly would have to review the state court's
> judgments to determine whether DRD improperly entered the enforcement orders
> without considering certain factors. It thus follows that the District Court lacked
> subject matter jurisdiction to entertain [plaintiff's] claims.

Id. at 178.

Another illustrative case is R.S. By R.D.S. v. Butler County, Pa., 700 Fed. App'x 105 (3d

Cir. 2017).  Here, a minor with "mood, anxiety, and attention deficit hyperactivity disorders"

violated a previously imposed term of probation after being involved in three "incidents" at

school.  Id. at 107.  For this violation, the minor was ultimately ordered to serve five days in a juvenile detention facility by a judge of the Butler County Court of Common Pleas, who later denied his motion for reconsideration.  Id.

About two years later, the minor and his parents filed suit against the child's probation officer, the juvenile court master who recommended the five-day sentence, and the state court judge that imposed that sentence, among others, alleging civil rights violations under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA").  Id.

On appeal, the Third Circuit affirmed the district court's dismissal of the minor's claims on Rooker-Feldman grounds for the following reasons.  First, the child had lost in state court because he lost his motion to reconsider the five-day sentence.  Id. at 108.  Second, "the child complain[ed] of injuries caused directly by state-court judgments" by specifically alleging that the violations of his civil rights were, in part, "caused by . . . the [order] that he be detained."  Id. Third, the federal case was filed about two years after the state court judgments were rendered. Id.  And finally, "[t]he child invited the District Court to review and reject [the] detention and revocation orders for their failure to incorporate reasonable accommodations accounting for his disabilities."  Id. at 109.  Hence, the fourth requirement was met because the minor was essentially requesting appellate review of the state court orders.  Id.

1.     Plaintiffs' Claims in Counts I, II, and III are Barred by Rooker-Feldman

Given these introductory cases and the elements of a Rooker-Feldman challenge that must be met as adopted by the Third Circuit, this Court will analyze the elements of the Doctrine under the facts presented in this case.

### a.      Plaintiffs Lost in State Court

With regard to the first requirement of the <u>Rooker-Feldman</u> test, Plaintiffs argue they did not lose in state court because they were not a party to the state court suit from which the Set off Order emanated.  (Doc. No. 7 at 10.)  Rather, Plaintiffs argue they were merely lawyers who represented the actual party to the dispute (i.e. the Estate).  (<u>Id.</u>)

Although Plaintiffs represented the parties named in the dispute in state court, it is clear Plaintiffs opposed the Set off Order because it had a detrimental effect on their fees.  As evidence of this fact, Plaintiffs filed an answer and brief in response to the Fund's Motion for Set off, arguing that the set off should not be against Plaintiffs, but rather against their own clients.  (Doc. No. 1 ¶ 42.)  Furthermore, Plaintiffs listed themselves as appellants in the state court Notice of Appeal of the Set off Order.  (Doc. No. 9-1.)  This point was not lost on Judge Matthew Carrafiello who, in the Opinion Sur Appeal, noted that the petition was an "improper attempt to pursue a claim by [Plaintiffs] in [their] own name."  (Doc. No. 4-3 at 11.)

In opposition to these contentions, Plaintiffs cite to <u>Johnson v. De Grady</u> for the proposition that <u>Rooker-Feldman</u> does not apply to non-parties.  512 U.S. 997 (1994). In <u>Johnson</u>, the United States sued the State of Florida, alleging that a number of its legislative districts diluted the voting strength of minorities in violation of the Voting Rights Act.  <u>Id.</u> at 1000.  Florida argued that the United States' claim should be dismissed under <u>Rooker-Feldman</u> since the Florida Supreme Court had already deemed their legislative districts appropriate under the Florida Constitution. <u>Id.</u> at 1005.  Therefore, Florida reasoned, the United States should be barred from seeking what amounts to appellate review of the state court judgment in federal court under <u>Rooker-Feldman</u>.  <u>Id.</u>  The Supreme Court disagreed.  The Court held that <u>Rooker-Feldman</u> did not apply to the United States' Voting Rights claim because the United States was neither a party to the state suit at issue, nor was it directly attacking the state court judgment.  <u>Id.</u>

Rather, the United States was attempting to litigate its claim against the State of Florida for the first time.  Id. at 1006.

Plaintiffs' reliance on Johnson is unavailing.  Unlike the United States in Johnson, Plaintiffs here actually lost in state court.  Again, Plaintiffs are the parties who lost $153,591.99 of their own fees as a result of the Set off Order.  In further contrast to Johnson, it is apparent from the face of the Complaint filed in this case that Plaintiffs are attacking the state court Set off Order in federal court because they are unhappy with the result.  For these reasons, and those discussed above, the first requirement of the Rooker-Feldman test is satisfied.

### b.     Plaintiffs Were Injured by the Set off Order

The second prong of the Rooker-Feldman test requires that a federal plaintiff complain "of injuries caused by [a] state-court judgment[ ]."  Great Western Mining, 615 F.3d at 166 (quoting Exxon Mobil, 544 U.S. at 284).  With regard to this requirement, the Third Circuit has explained:

> The critical task is thus to identify those federal suits that profess to complain of injury by a third party, but actually complain of injury "produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it."

Great Western Mining, 615 F.3d at 167 (quoting Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 88 (2d Cir. 2005)).

Similar to the plaintiffs in Lyman and R.S. By R.D.S., supra, Plaintiffs here complain of injuries "produced by a state-court judgment."  Great Western Mining, 615 F.3d at 167 (quoting Hoblock, 422 F.3d at 88).  Plaintiffs are unhappy about the loss of $153,591.99 in fees under the Set off Order.

Plaintiffs counter this obvious fact by arguing that they were harmed not by the Set off Order but by the conduct of Defendants in seeking it in the first place.  But the lawyers and state officials named in the Complaint had every right to sue Plaintiffs for the money owed to the

Fund by statute. Instead of taking unilateral action against Plaintiffs, they acted within the confines of the law and sought a state court judgment. While Defendants were ultimately the ones who enforced the Set off Order by withholding the money at issue, they did so according to the valid decree of a state court judge. Therefore, despite Plaintiffs' contention that Defendants were responsible for violating their Fourth, Fifth, Eighth, and Fourteenth Amendment rights in Counts I to III, Plaintiffs are complaining of an injury caused by a state court judgment and not by third parties. Therefore, the second requirement of the <u>Rooker-Feldman</u> test is met.[11]

### c. Plaintiffs Are Asking the Court to Review and Overturn the Set off Order

The question posed in the fourth prong is whether a plaintiff's claims will require prohibited "appellate review" by this Court of a state court decision. <u>Great Western Mining</u>, 615 F.3d at 169. This prohibited appellate review involves analyzing the lower court's proceedings to determine "whether it reached its result in accordance with law." <u>Id.</u> (quoting <u>Bolden v. City of Topeka</u>, 441 F.3d 1129, 1143 (10th Cir. 2006)). Here, Plaintiffs are asking the Court to declare Defendants' withholding of attorney's fees a violation of their Fourth, Fifth, and Fourteenth Amendments. Because the withholding has already occurred, the kind of relief Plaintiffs are seeking has been called "retroactive declaratory relief." The request for such relief is an attack on the legal foundations of the state court order.

Again, Defendants were acting pursuant to a state court order in setting off the attorney's fees at issue here. If the Court were to hold the actions of Defendants unconstitutional, it would be forced to deny the legal validity of the Set off Order that authorized such actions. Moreover,

---

[11] The third prong of the <u>Rooker-Feldman</u> test requires that the state court judgment(s) be rendered before the federal suit is filed. <u>Great Western Mining</u>, 615 F.3d at 165 (quoting <u>Exxon Mobil</u>, 544 U.S. at 284). This requirement is uncontested and is fulfilled in this case because Judge Matthew Carrafiello issued the Set off Order on December 13, 2018 and the present action was filed on April 11, 2019. (Doc. No. 1.) Therefore, the state court judgment was rendered before this federal suit was filed.

Plaintiffs request the full amount of the set off granted by the state court order as damages. (Doc. No. 1.) As such, Plaintiffs are asking this Court to deny legal force and effect to the state court order by effectively reversing it and forcing Defendants to "pay back" to Plaintiffs the fees withheld. Consequently, since Plaintiffs are requesting that the Court overturn the state court Set off Order, the fourth requirement of the <u>Rooker-Feldman</u> test is satisfied with regard to Counts I to III. For all these reasons, <u>Rooker-Feldman</u> applies here and Counts I to III will be dismissed.[12]

### 2. Count IV Is Not Barred By The <u>Rooker-Feldman</u> Doctrine

As described above, Plaintiffs allege in Count IV that Defendants violated their rights under the Fourteenth Amendment by depriving them of equal protection of the law based on race. (Doc. No. 1 ¶ 99.) In particular, the facts that Plaintiff relies upon in Count IV are alleged in paragraphs 100 and 101 of the Complaint as follows:

100. Defendants, for no other reason than race, ignored information provided by Plaintiffs RHW [Rhonda Hill Wilson] that was intended to facilitate Defendants efforts to obtain the Mcare portion of the punitive damages award from the correct party.

101. In legal pleadings written and approved by Defendants, for no other ostensible reason than race, made disparaging remarks about Plaintiffs RHW's character, motivation and actions taken. These comments are contained in public court documents and have the potential for a

---

[12] Despite the applicability of <u>Rooker-Feldman</u>, Plaintiffs nonetheless assert that this Court should abstain from applying this test because it "is a 'narrow doctrine' that 'applies only in limited circumstances,'" without fully explaining what these limited circumstances are. <u>Great Western Mining</u>, 615 F.3d at 169 (quoting <u>Lance v. Dennis</u>, 546 U.S. 459, 464-66 (2006)). The Third Circuit recognized the narrow scope of <u>Rooker-Feldman</u> in <u>Great Western Mining</u> and developed its four-part test with this in mind. Therefore, the fact that <u>Rooker-Feldman</u> may be limited in applicability does not <u>per</u> <u>se</u> bar this Court from dismissing under the Doctrine where the Third Circuit's requirements are met. Here, all four prongs of the test are satisfied with respect to Counts I, II and III. As a result, the claims in these counts are barred by the <u>Rooker-Feldman</u> Doctrine and the Court will dismiss them pursuant to Federal Rule of Civil Procedure 12(b)(1).

devastatingly detrimental effect upon Plaintiffs RHW both personally and professionally, and can impact the livelihood of Plaintiffs RHW.

(Id. ¶¶ 100, 101.)  Moreover, Plaintiffs allege the following occurred on November 19, 2018 after they filed their Answer to Defendant's Motion to Approve Equitable Set off:

46.     On November 19, 2018, the Mcare Fund by its Counsel filed its Reply Brief in which Defendants accused Plaintiffs RHW of being disingenuous and of "bad acts" in its motion and memorandum in support of same.[13]

(Id. ¶ 46.)

Because Defendants have moved to dismiss Count IV under Rooker-Feldman, the Court will first address whether it is jurisdictionally barred from entertaining Count IV.  (Doc. No. 4.)

To survive a Rooker-Feldman dismissal, the Third Circuit has explained that a federal plaintiff need only present an "independent claim," apart from the pertinent state court judgment. Great Western Mining, 615 F.3d at 166 (quoting GASH Assocs. v. Rosemont, 995 F.2d 726, 728 (7th Cir. 1993)).  An independent claim is one that "stemmed from 'some other source of injury, such as a third party's actions.'"  Id. at 168 (quoting McCormick v. Braverman, 451 F.3d 382, 384 (6th Cir. 2006)).  These claims may deny a "legal conclusion reached by the state court," but do not amount to appellate review.  Id. at 169 (quoting Exxon Mobil, 544 U.S. at 293).

In Count IV, Plaintiffs are not complaining of injuries that resulted from the state court Set off Order.  Again, in Count IV, Plaintiffs allege that Defendants "ignored information provided by Plaintiffs" and made "disparaging remarks about Plaintiffs' . . . character, motivation and action," for "no other . . . reason than race."[14]  (Doc. No. 1 ¶ 100, 101.)  They further allege that Defendants "accused [them] of being disingenuous" in a Reply Brief.  (Id. ¶ 46.)  Despite the

---

[13]  The Reply Brief has not been made part of the record here by Plaintiffs.

[14]  In the Complaint, Plaintiffs do not state Plaintiff Rhonda Hill Wilson's race. Further, it is unclear how the remarks were disparaging or based on race.

paucity of detail, the Court is persuaded that Plaintiffs are complaining of alleged injuries inflicted by Defendants in papers they filed and the actions they took while seeking the Set off Order.

Consequently, Plaintiffs' alleged injuries arising from the equal protection claim in this Count do not stem from the Set off Order itself. Rooker-Feldman dictates that where Plaintiffs are complaining of injuries caused by third parties and not a state court judgment, Rooker-Feldman does not apply. Consequently, this Court will not dismiss Count IV under the Rooker-Feldman Doctrine.

**B.    Plaintiffs' Claims Against Defendants in Their Official Capacities are Barred by Eleventh Amendment Immunity**

Plaintiffs bring constitutional claims in Counts I to IV against Defendants in their official and individual capacities pursuant to 42 U.S.C. § 1983. (Doc. No. 1 ¶¶ 3-7.) In addition to arguing that these counts should be dismissed under Rooker-Feldman, as discussed above, Defendants argue that Eleventh Amendment immunity bars the official capacity claims. (Doc. No. 4 at 5.) For the following reasons, the Court agrees.

The Eleventh Amendment bars all private suits against non-consenting states in federal court. Id. (citing Hans v. Louisiana, 134 U.S. 1 (1890)). This immunity "extends to state agencies and departments as well as state officials sued in their official capacity." Foster v. McLaughlin, 203 F. Supp. 3d 483, 487 (E.D. Pa. 2016).

That being said, there are three exceptions to Eleventh Amendment immunity. First, Congress may abrogate a state's Eleventh Amendment immunity pursuant to its "power 'to enforce the Fourteenth Amendment.'" Koslow v. Pennsylvania, 302 F.3d 161, 168 (3d Cir. 2002) (quoting Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999)). "Second, a state may waive its sovereign immunity by consenting to suit." Id. (citing

Coll. Sav. Bank, 527 U.S. at 670). Third, a plaintiff may obtain prospective relief against state officials for "ongoing violations of federal law" under the Supreme Court's decision in Ex parte Young, 209 U.S. 123 (1908). Id. Prospective relief in this context is an injunction prohibiting continued or future conduct.

With regard to the first exception, the Supreme Court has unequivocally stated that Section 1983 "does not abrogate the States' Eleventh Amendment immunity." Quern v. Jordan, 440 U.S. 332, 341-42 (1979). Thus, to be sued pursuant to Section 1983, a defendant must be a "person" within the meaning of the statute. The Supreme Court has noted that, while state officials may literally be persons, they are not "persons" under Section 1983 and therefore cannot be sued in their official capacity. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)) ("A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."). For this reason, Plaintiff cannot rely on the first exception to Eleventh Amendment immunity to bring official capacity claims against Defendants.

As to the second exception, the Commonwealth of Pennsylvania has not waived its immunity under the Eleventh Amendment. According to the Pennsylvania Constitution, "[s]uits may be brought against the Commonwealth in such a manner . . . as the Legislature may by law direct." Lavia v. Pa. Dep't of Corr., 224 F.3d 190, 195 (3d Cir. 2000) (quoting Pa. Const. Art. 1, § 11). By statute, the Pennsylvania legislature has explicitly "declined to waive its Eleventh Amendment immunity." Id. (citing 42 Pa.C.S.A. § 8521(b)). Therefore, Pennsylvania has not made itself amenable to suit by a citizen in federal court.

With regard to the third exception, Plaintiffs are not petitioning the court under the legal theory articulated by Ex parte Young to enjoin Defendants from any ongoing actions.  Koslow, 302 F.3d at 168.

In sum, both States and their employees, sued in their official capacity, retain Eleventh Amendment immunity from suit in federal court.  For the reasons stated above, Plaintiffs fail to overcome this immunity.  Accordingly, any claims against Defendants in their official capacities in Counts I to IV will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).[15]

### C.      Plaintiffs' Claims Against Defendants in Their Individual Capacities in Count IV will be Dismissed

In regard to the individual capacity claims, Defendants argue that the Complaint fails to show Defendants' personal involvement in allegedly violating Plaintiffs' equal protection rights and, as a result, Plaintiffs' federal claims, including Count IV, should be dismissed.  (Doc. No. 4 at 7.)  The Court agrees.

To plead a sufficient civil rights claim against a defendant in his individual capacity, a plaintiff must show that the defendant had "personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior."  Rode v. Dellariciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing Parratt v. Taylor, 451 U.S. 527, 537 n.3 (1981)); see also, Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (dismissing claims against Attorney General for failing to describe his personal involvement).

Here, Plaintiffs have not alleged in the Complaint the personal involvement of Defendants. What each of them specifically did here is a mystery.  Plaintiffs continually refer to Defendants and the Fund generally without delineating the actions of the Defendants.  (Doc. No. 1 ¶¶ 41, 49, 61, 71, 75, 80, 88, 90, 99, 103, 108.)   Merely stating that a party such as the

---

[15]  Although Counts I to III are being dismissed under the Rooker-Feldman Doctrine, the Defendants named in these Counts could not be sued in their official capacity in any event.

Commissioner of the Commonwealth of Pennsylvania Insurance Department is responsible is insufficient to show that they were personally involved in the alleged conduct. For this reason, Count IV will be dismissed against all Defendants.

### D. Plaintiffs' Claim in Count IV for a Violation of Their Right to Equal Protection will be Dismissed for Failure to State a Claim

There is yet another reason why Count IV will be dismissed. As noted previously, Plaintiffs assert in Count IV a violation of the Equal Protection Clause based on race with the following allegations:

> 46. On November 19, 2018, the Mcare Fund by its Counsel filed its Reply Brief in which Defendants accused Plaintiffs RHW [Rhonda Hill Wilson] of being disingenuous and of "bad acts" in its motion and memorandum in support of same.

> 100. Defendants, for no other reason than race, ignored information provided by Plaintiffs RHW that was intended to facilitate Defendants efforts to obtain the Mcare portion of the punitive damages award from the correct party.

> 101. In legal pleadings written and approved by Defendants, for no other ostensible reason than race, made disparaging remarks about Plaintiffs RHW's character, motivation and actions taken. These comments are contained in public court documents and have the potential for a devastatingly detrimental effect upon Plaintiffs RHW both personally and professionally, and can impact the livelihood of Plaintiffs RHW.

(Doc. No. 1 ¶¶ 46, 100, 101.) These allegations simply do not allege an equal protection violation.

With regard to equal protection claims brought under Section 1983, the Third Circuit has explained the following:

> To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, plaintiffs must prove the existence of purposeful discrimination. They must demonstrate that they "receiv[ed] different treatment from that received by other individuals similarly situated."

Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 273 (3d Cir. 2014) (quoting Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990)).  Moreover, at the pleading stage, Twombly and Iqbal "ask[ ] for more than a sheer possibility that a defendant has acted unlawfully." Holmes v. Gates, 403 Fed. App'x 670, 672 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 678).  A complaint does not "suffice if it tenders naked assertion[s] devoid of further factual enhancement."  Id.  (quoting Iqbal, 556 U.S. at 678) (internal quotation marks omitted).

In this case, Plaintiffs have not plausibly alleged that Defendants violated their equal protection rights.  First, Plaintiffs fail to provide any facts showing the "existence of purposeful discrimination."  Id.  Plaintiffs do not contend that they received treatment different from any other individual.  Rather, they allege sketchy facts and speculate that based on race they received differential treatment. Speculation does not suffice to establish that Defendants treated Plaintiffs different than "any other individuals similarly situated."  Blunt, 767 F.3d at 273.

Second, the actions that Plaintiffs complain of were taken by Defendants in defense of their client.  The Third Circuit has held in the context of 1983 claims that "absolute immunity attaches to those who perform functions integral to the judicial process."  Williams v. Consovoy, 453 F.3d 173, 178 (3d Cir. 2006).  Defendants were state employees seeking a lawful state court order to withhold money statutorily owed to the Fund.  To the extent that Plaintiffs allege Defendants violated their rights during the course of litigation, they fail to overcome this privilege.  Based on the foregoing, there is no purposeful discrimination shown by Plaintiffs and Count IV will be dismissed for this additional reason.

### E.     Defendants Are Entitled to Qualified Immunity in This Case

In addition, Defendants are entitled to qualified immunity with respect to Plaintiffs' individual claims against them in Counts I to IV.

Qualified immunity shields "officials performing discretionary functions [from] . . . liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights." Williams v. Sec'y Pa. Dep't of Corr., 848 F.3d 549, 557 (3d Cir. 2017) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." City of Escondido, Cal. v. Emmons, 139 S. Ct. 500, 503 (2019) (quoting Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018) (per curiam)). The Supreme Court has made explicit that "the clearly established right must be defined with specificity." Id.

First, Defendants enjoy qualified immunity here because, as explained above, they have not violated a constitutional right. Second, for all their claims, Plaintiffs have not shown how Defendants, in pursuing a state court order to recover monies that were concededly not forwarded to them as required under the Mcare law, violated clearly established constitutional or statutory rights of which a reasonable person would have known. For these additional reasons, the Complaint is legally insufficient.

### F. Plaintiffs' State Law Claims Will Be Dismissed Pursuant to 28 U.S.C. § 1367

Plaintiffs also bring a state law claim of abuse of process against Defendants in Count V (Doc. No. 1.) According to 28 U.S.C. § 1367(c)(3), a federal district court may "decline to extend supplemental jurisdiction" over a plaintiff's state law claims if the court has already dismissed all federal claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). Because this Court is granting Defendants' Motion to Dismiss regarding Plaintiff's federal claims, the Court will decline to extend jurisdiction over Plaintiffs' ancillary state law claim set

forth in Count V under § 1367(c)(3). As a result, Plaintiffs' state law claim will be dismissed without prejudice.

### G. Plaintiffs' Request for Punitive Damages Will Be Dismissed

In Count VI of their Complaint, Plaintiffs allege that "[t]he aforementioned acts of the Defendants were outrageous and reckless" and therefore the Court should award punitive damages. (Doc. No. 21 ¶ 108.) Because Counts I to IV are being dismissed for the reasons noted above and the Court has declined to exercise supplemental jurisdiction over Count V, the punitive damages request in Count VI will be dismissed as moot.

### H. Leave to Amend the Complaint Will Be Denied in This Case

Plaintiffs have requested the opportunity to amend the Complaint should the Court dismiss it in this case. (Doc. No. 14 at 12.)

Federal Rule of Civil Procedure 15(a)(2) states, "a party may amend its pleading only with the opposing party's written consent or the court's leave" and that "the court should freely give leave when justice so requires." "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice or futility." Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004).

Here, leave will not be granted because doing so would be futile. Even if Plaintiffs described the role of each Defendant with more specificity, the Defendants are still entitled to qualified immunity in this case. These Defendants were state government officials and their counsel who pursued what they believed was a legitimate claim in state court on which they prevailed. They did not take unilateral action; rather, they sought a judicial decision which, under the facts of this case, was a reasonable decision on their part.

Moreover, Rooker-Feldman clearly applies in this case because Plaintiffs are attempting to use the federal court as an appeals court for a state court order that she disagrees with.

Plaintiffs have an appeal pending in state court from the Set off Order, which is the appropriate forum in which to pursue their appeal. As such, Rooker-Feldman affects Counts I to III and Plaintiffs' failure to allege an equal protection claim bars the claim in Count IV. In this regard, based on the facts here, it would be a long stretch to believe that Plaintiffs could allege new facts that would identify other persons similarly situated to them.

## V.    CONCLUSION

For the reasons set forth above, the Court will grant Defendants' Motion to Dismiss (Doc. No. 4) and will dismiss the Complaint in its entirety. An appropriate Order follows.